# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID LEE RODRIGUEZ | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of | : | |
| Social Security | : | NO. 23-177 |

## O P I N I O N

SCOTT W. REID                                                                                         DATE: December 20, 2023
UNITED STATES MAGISTRATE JUDGE

David Lee Rodriguez brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

I.     *Factual and Procedural Background*

Rodriguez was born on March 13, 1985. Record at 157. He completed high school and two years of college. Record at 196. He worked in the past as a truck driver, and served in the military. *Id*.

On June 16, 2021, Rodriguez applied for DIB, alleging disability since July 8, 2020, as a result of mental health impairments, insomnia, blood clotting disorders (thrombosis), and injuries to his back and knee. Record at 157, 194. His application was denied initially, and upon reconsideration. Record at 69, 92. Rodriguez then requested a hearing de novo before an Administrative Law Judge ("ALJ"). Record at 97.

A hearing was held in this case on June 14, 2022.  Record at 42.  On July 13, 2022, however, the ALJ issued a written decision denying benefits.  Record at 10.  The Appeals Council denied Rodriguez's request for review on September 19, 2022, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security.  Record at 1.  Rodriguez then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision.  *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In his decision, the ALJ found that Rodriguez suffered from the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, deep vein thrombosis (DVT), portal venous thrombosis, and mental impairments including post-traumatic stress disorder ("PTSD"), major depressive disorder, and insomnia. Record at 13. He also found Rodriguez to suffer from the non-severe impairments of obesity, gastroesophageal reflux disease, and hyperlipidemia. *Id*.

The ALJ found, however, that no impairment, and no combination of impairments, met or medically equaled a listed impairment. Record at 14. He concluded that Rodriguez retained the RFC to perform sedentary work with the following limitations:

> Occasional use of foot controls. Frequent [as opposed to constant] use of hand controls. Frequent reaching. No climbing of ropes, ladders, or scaffolds. He can perform other postural activities no more than occasionally. Frequent exposure to unprotected heights, moving mechanical parts, extreme temperatures, humidity, and vibration. Occasional operation of a motor vehicle. He is limited to the performance of routine tasks. He is

further limited to simple work-related decisions.  He is limited to frequent interaction with supervisors and occasional interaction with co-workers and the public.

Record at 16.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that, although Rodriguez could not return to his past work, he could work in jobs such as a nut sorter, fine assembler, or surveillance system monitor.  Record at 23-4.  He concluded, therefore, that Rodriguez was not disabled.  Record at 24-5.

In his Request for Review, however, Rodriguez maintains that remand is required because the ALJ failed to explain whether he adopted or rejected certain functional limitations made by medical sources.  Similarly, he argues that remand is required because the ALJ failed to include in his RFC assessment accommodations for the moderate limitations he found in concentration.

IV.    *Discussion*

    A.    *Functional Limitations Allegedly Not Discussed*

        1.  *Dr. Monfared*

Ziba Monfared, M.D., is a consulting medical expert who examined Rodriguez on October 26, 2021.  Record at 909.  She diagnosed him with chronic back pain associated with degenerative disc disease, a history of deep vein thromboses, left knee pain, and history of a head injury.  Record at 912.  Dr. Monfared noted that Rodriguez was able to drive, take care of his children daily, and shower and dress himself.  Record at 910.  His gait was normal, he used no assistive device, and he was able to rise from a chair and get on and off the examination table independently.  Record at 909-910.  He had normal strength in all extremities, with no muscle atrophy.  Record at 911-12.

According to Dr. Monfared, Rodriguez could occasionally lift or carry up to 20 pounds. Record at 915. She found he could sit for eight hours in a workday, and stand and walk for a total of two hours each, in increments of 30 minutes. *Id*. He could frequently reach, handle, finger, feel and push/pull. Record at 916. He could occasionally operate foot controls, and occasionally climb stairs and ramps, kneel, or crawl. Record at 916-18. However, he could never climb ladders or scaffolds, balance, stoop, or crouch. Record at 918. He could shop, travel alone, use public transportation, climb a few steps, prepare a simple meal, care for his personal hygiene, and sort and handle paper files. Record at 920. However, he could not walk a block at a reasonable pace on rough or uneven surfaces. *Id*.

The ALJ found Dr. Monfared's findings to be "generally persuasive," although he differed from her in a few respects. Record at 21. Nevertheless, Rodriguez argues that the ALJ "failed to adopt or reject and explain his reasons for rejecting the specific functional limitations offered by Dr. Monfared." *Plaintiff's Brief* at 3.

For the most part, Rodriguez is mistaken. The ALJ found him capable of performing sedentary work, which is defined in the Social Security regulations as involving lifting no more than 10 pounds at a time, and walking and standing up to occasionally. Record at 16; 20 C.F.R. § 416.967. As to walking and standing, this is entirely consistent with Dr. Monfared's findings that Rodriguez could walk and stand for half an hour at a time each, for a total of two hours in an eight-hour workday. Record at 915.

Like Dr. Monfared, the ALJ found that Rodriguez could reach frequently, but could never climb ladders or scaffolds. Record at 16. He found that all other postural activities could be performed no more than occasionally. *Id*. This is consistent with Dr. Monfared's finding that

Rodriguez could occasionally climb stairs and ramps, kneel, crawl, balance, stoop and crouch. Record at 916-18.

The ALJ found Rodriguez's lifting to be more limited than did Dr. Monfared, but he did explain why.[1] He also found that Rodriguez was able to drive only occasionally, while Dr. Monfared found he could drive frequently (although Dr. Monfared did find Rodriguez could operate foot controls only occasionally, which is relevant to driving).  Record at 21, 917, 919.

It is unclear why Rodriguez would want a remand for the ALJ to impose *less* favorable limitations than he did originally.  In any event, remand would not be necessary in such a circumstance, because remand is not required where it would not affect the outcome of a case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  With less favorable limitations, the ALJ would only be more likely to find Rodriguez not to be disabled.

The only limitation Dr. Monfared imposed which the ALJ did not discuss specifically is the inability to walk a block at a reasonable pace on rough or uneven surfaces.  However, the ALJ limited Rodriguez to sedentary work, so it is unlikely that this ability is needed in the jobs identified by the ALJ.  It should also be noted that Dr. Monfared observed Rodriguez to walk with no assistive device, and with a normal gait.  Record at 909.  Therefore, her report cannot fairly be read as opining that his walking was too poor to permit sedentary work.

The record contains only one functional report besides Dr. Monfared's, prepared by agency reviewing expert Chankun Chung, M.D., on February 3, 2022.  Record at 74-6.  Dr. Chung found that Rodriguez could work at a light exertional level.  Record at 74.  Clearly, it would not benefit Rodriguez to remand this case for further explanation of why the ALJ did not

---

[1] The ALJ wrote: "[G]iven the findings of tenderness to palpitation, spasm, and restricted range of motion, despite several treatment modalities … [the evidence] supports a greater lifting/carrying restriction that supposed by the doctor."  Record at 21.

rely on Dr. Chung to issue an opinion substantially less favorable to him. In any event, the ALJ explained that "the combined effect of the claimant's impairments" led him find Dr. Chung's opinions only "partially persuasive."

In summary, there is no substance to Rodriguez's claim that the ALJ inadequately considered Dr Monfared's findings. Where he differed, he gave Rodriguez the benefit of the doubt.

    2.    *Dr. Barnes*

Stacie Barnes, Psy.D., did not examine Rodriguez, but she reviewed his mental health records for the agency. In a report dated February 3, 2022, she wrote that Rodriguez suffered from severe mental conditions, namely depressive disorder, an anxiety disorder, and a trauma-related disorder. Record at 72. She indicated that he had a mild impairment in the ability to understand, remember, and apply information, and moderate limitations in the ability to interact with others, concentrate, and adapt or manage himself. Record at 73.

Dr. Barnes wrote:

> The claimant's basic memory processes are intact. The claimant can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks). The claimant can make simple decisions and would not require special supervision in order to sustain a routine. The claimant can perform simple, routine, repetitive tasks in a stable environment. The claimant is capable of performing within a schedule and at a consistent pace.
>
> The claimant is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. The claimant is capable of asking simple questions and accepting instruction. The claimant is able to interact appropriately with the general public. The claimant is able to get along with others without distracting them. The claimant can exercise appropriate judgment.

Record at 78.

The ALJ agreed with Dr. Barnes that Rodriguez had a mild limitation in understanding, remembering, or applying information, and that his limitations in the other specified areas were moderate. Record at 14-5. He set forth Dr. Barnes's findings, and summarized them: "State agency psychologist Stacie Barnes, Psy.D., opined that the claimant could meet the basic mental demands of work despite his impairments." Record at 21-2.

The ALJ continued:

> I find this opinion generally persuasive, as it is consistent with and supported by the record. I note that the claimant's care has been routine and conservative throughout the relevant period, despite some attendance issues, even while performing examinations via telehealth as previously discussed. Based on the mental status examination and the fact that despite his attendance issues, as previously discussed, the claimant did not have any acute exacerbations of his condition, I find the assessed limitations, which are consistent with the performance of simple, routine work, generally persuasive.

Record at 22.

Thus, as Rodriguez concedes, the ALJ did not reject any of Dr. Barnes's findings. *Plaintiff's Brief* at 3. He notes, however, that the ALJ did not specifically accept or reject Dr. Barnes's statement that he could work "in a stable environment," or her statement that he was limited to "simple or repetitive tasks."

Yet the ALJ specifically limited Rodriguez to "routine tasks." "Routine" is generally treated as synonymous with "simple" and "repetitive" in describing a Social Security petitioner's ability to perform work. *See, e.g.*, *Zirnsak v. Colvin*, 777 F.3d 607, 617-8 (3d Cir. 2014) (explaining that limitations to "simple, routine tasks" and "simple, repetitive tasks" are consistent with unskilled work requiring level 3 reasoning); *Menkes v. Astrue*, 262 Fed. App'x. 410, 412 (3d Cir. 2008) ("[P]erforming a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration"); *Purdy v. Kijakazi*, Civ. A. No. 22-2048, 2023 WL 6626124 at *9 (E.D. Pa. Oct 11, 2023) ("The ALJ addressed the limitations

imposed by Plaintiff's mental impairments by limiting him to simple routine tasks and simple work-related decisions"). Thus, the ALJ's failure to employ the words "simple" and "repetitive," as Dr. Barnes did, was insignificant.

The ALJ's failure to use the phrase "stable environment" seems equally innocuous, given that he limited Rodriguez to routine tasks, simple work-related decisions, and only occasional interaction with co-workers and the public. Record at 16. It is not clear exactly what more would be needed to make an environment stable, and Rodriguez is silent on that issue. Even if the ALJ erred in this regard, remand would not be necessary. As above, remand is not required where it would not affect the outcome of a case. *Rutherford*, *supra*, at 399 F.3d 553. It is extremely unlikely that the ALJ would change his decision to "disabled" after reconsidering the findings of a doctor who, after all, found Rodriguez able to work.

Thus, it is not apparent that the ALJ differed from Dr. Barnes in any respect. Therefore, there can be no merit to Rodriguez's argument that the ALJ failed to explain his "rejection" of any of Dr. Barnes's findings.

Further, the ALJ's observation that Rodriguez had no acute exacerbations of his mental illness during or shortly before the relevant period is well-supported by the medical records, which show monthly therapy and medication, but no mental hospitalizations, partial hospitalizations, or even increases in the frequency of therapy. Record at 738-803 and 977-803. The record does not contain any other functional report regarding Rodriguez's mental health symptoms, but a treatment note from January 8, 2020, shortly before the relevant period, describes him as having "appropriate ADL functioning," although he was depressed and anxious. Record at 791. There is no evidence of any later decompensation.

B.     *Accommodation in the RFC Assessment for Limited Concentration*

As Rodriguez points out, the ALJ undoubtedly found him to have moderate limitations in concentration. Record at 15. Although the ALJ restricted Rodriguez in his RFC assessment to routine tasks and simple work-related decisions, with only occasional interaction with co-workers and the public, and no more than frequent (as opposed to constant) contact with supervisors, Rodriguez argues that none of these accommodations address his limitation in concentration.

However, as noted above, the Court of Appeals for the Third Circuit has said – although in a non-precedential opinion – that "[p]erforming a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration." *Menkes v. Astrue*, supra at 262 Fed. App'x. 412. Recently, moreover, a court in this District found that a limitation to "simple, routine tasks and simple work-related decisions" was adequate to accommodate a claimant's "poor" concentration. *Purdy v. Kijakazi*, Civ. A. No. 22-2048, 2023 WL 6626124 at *9 (E.D. Pa. Oct. 11, 2023).

As Rodriguez notes, the Court of Appeals for the Third Circuit decided in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), that a restriction to simple work did not accommodate a mid-range limitation in concentration in that specific case. However, its subsequent decision in *Hess v. Commissioner of Social Security*, 931 F.3d 198 (3d Cir. 2019), has been interpreted as permitting a restriction to "unskilled work" or "simple tasks" to accommodate a moderate limitation in concentration. *Weaver v. Saul*, Civ. A. No. 18-3295, 2019 WL 4220927 at *1 (E.D. Pa. Sep. 5, 2019); *and see Karlin v. Saul*, Civ. A. No. 20-3113, 2021 WL 2036649 at *5 (E.D. Pa. May 21, 2021) (Discussing cases decided after *Hess*, and concluding that "courts have routinely found that a limitation to 'unskilled work' can be sufficient to account for moderate

mental limitations"), and *Starr v. Saul*, Civ. A. No. 19-920, 2020 WL 1975080 at *15 (E.D. Pa. Apr. 24, 2020) (restriction to "simple tasks" was adequate to address a moderate limitation in concentration, where adequately explained, citing *Hess*).

There is no apparent reason why the ALJ's restriction of Rodriguez to routine tasks and simple work-related decisions should not be treated in the same way as a restriction to unskilled work, since "unskilled work is merely 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time'." *Weaver*, *supra*, *quoting* 20 C.F.R. § 404,1568(a).

Finally, as required by *Hess*, the ALJ has offered a "valid explanation" for his findings. *Hess*, *supra*, at 931 F.3d 211.  The ALJ noted that Rodriguez had a "history of depression and PTSD-related symptomatology, including mood swings, poor sleep, anxiety, flashbacks to prior trauma, lack of energy, low motivation, hypervigilance, and a lack of interest in usual activities." Record at 19, *citing* Exhibits 8F, 10F, and 11F.  Nevertheless, although the treatment notes contained findings of variable attention/concentration, they also showed Rodriguez to be consistently fully oriented, and "largely cooperative." *Id.*, *and see*, *e.g.*, Record at 977-8 (December 17, 2021:  Fully oriented, with appropriate affect, intact memory and cognition, and normal speech, with goal directed, reality based, and organized thought process, and no hallucinations or delusions).  As above, the ALJ also relied heavily upon Dr. Barnes's report, which found Rodriguez could engage in simple, routine, and repetitive tasks.  Record at 21-2.

To demonstrate defective concentration, Rodriguez cites a January 30, 2019, speech and cognition assessment made by Ahamed Karim, M.D., a neurologist at the Veteran's Administration.  Although this assessment predates the relevant time period for this SSI application, Rodriguez accurately points out that he complained to Dr. Karim of short-term

11

memory problems, forgetfulness, and decreased attention and concentration. Record at 364. However, he fails to note that testing by Dr. Karim revealed that he actually had a "good level of attending and concentration," "excellent problem solving," and "minimal distractibility," with an "intact" remote and present memory. Record at 361. The record does not show that Rodriguez was ever retested. Therefore, though this appointment might conceivably be described as additional evidence of Rodriguez's anxiety, it does not prove cognitive impairment.

V.     *Conclusion*

In accordance with the above discussion, I conclude that Rodriguez's Request for Review in this case should be denied, and judgment entered in favor of the Commissioner.


BY THE COURT:


*Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE